OLEY TOWNSHIP, Petitioner,

v.

PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION and Stauffer B. Reifsneider, Respondents.

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 1997.
Decided Feb. 20, 1998.
Publication Ordered April 13, 1998.

Eugene E. Dice, Harrisburg, for petitioner.

Paul J. Bruder, Harrisburg, for respondent, DEP.

Maxine M. Woefling, Harrisburg, for respondent, Stauffer Reifsneider.

Before DOYLE and McGINLEY, JJ., and RODGERS, Senior Judge.

DOYLE, Judge.

Oley Township (Township) appeals from an order of the Environmental Hearing Board (Board) dismissing the Township's appeal from an order of the Department of Environmental Protection (DEP) directing the Township to revise its official plan to include a proposed subdivision to be developed by an individual property owner, Stauffer Reifsneider (Reifsneider). We affirm.

On April 17, 1992, Reifsneider submitted a plan to the Township to divide his 24.57 acre tract into a 13–lot subdivision, pursuant to the Municipalities Planning Code (Code).[1] Subsequent to Reifsneider's submission of his plan, the Township amended its zoning ordinance to prohibit the residential development of his land, except under strict limitations. Additionally, the Township failed to act upon Reifsneider's request for approval within the ninety days provided by Section 508(3) of the Code.[2] As a result of the Township's failure to take action on the subdivision request, the Court of Common Pleas of Berks County, in an order dated April 23, 1993, ordered the Township to approve Reifsneider's plan. The Township then appealed to this Court, which affirmed the orders of the trial court.[3] The Township finally signed and recorded the subdivision plan on June 6, 1995.

On October 25, 1995, the Township revised its official sewage plan, adopting a density requirement allowing only two dwelling units on plots of property between seven and thirty acres in size, which was approved by DEP. On January 15, 1996, Reifsneider submitted a planning module for new land development to the Township, pursuant to the Pennsylvania Sewage Facilities Act (Act),[4] which included a preliminary hydrogeologic evaluation.[5] Reifsneider proposed on-lot sewage disposal and individual water wells in the subdivision plan. The Township refused to approve the planning module as a revision to its official sewage plan, because: 1) the proposed subdivision was inconsistent with the comprehensive plans of both the Township and Berks County; 2) the proposed subdivision was not consistent with the Township's official sewage plan which limited residential development in agricultural areas in accordance with the Township's zoning ordinance; 3) the proposed subdivision would be inconsistent with Commonwealth policies to protect prime agricultural lands; and 4) the proposed subdivision would aggravate already elevated levels of nitrate-nitrogen in the area.

Pursuant to Section 5(b) of the Act, 35 P.S. § 750.5(b), Reifsneider submitted a private request to DEP to order the Township to revise its official plan to accommodate the needs of his subdivision. After reviewing the hydrogeological reports of experts from both parties regarding the sewage needs of the subdivision, and because Reifsneider's subdivision was a recorded existing subdivision by virtue of the trial court's order, DEP issued an order on September 18, 1996, requiring the Township to revise its official sewage plan to accommodate the subdivision. The Township appealed DEP's order to the Board, which dismissed the Township's appeal in its July 30, 1997 Adjudication and Order. This appeal followed.

On appeal to this Court, the Township raises four issues: 1) whether the Board erred when it held that the provision in the Township's sewage plan that contained a density requirement on residential development was improperly inserted to regulate land use and not to account for geologic and hydrogeologic conditions affecting the design and use of on-site sewage systems; 2) wheth-

1. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202.

2. 53 P.S. § 10508(3).

3. *Oley Township Board of Supervisors v. Reitnour,* 164 Pa.Cmwlth. 695, 643 A.2d 791 (Nos. 1156–60 C.D.1993, filed May 11, 1994), *petition for* *allowance of appeal denied,* 540 Pa. 588, 655 A.2d 518 (1995).

4. Act of January 24, 1966, P.L. (1965) 1535, *as amended,* 35 P.S. §§ 750.1–.20a.

5. This evaluation is required by 25 Pa.Code § 71.62(c)(2).

er the Board erred by ordering the Township to approve a sewage plan that did not delineate a dispersion plume and did not consider impacts on residential water supply wells adjacent to the subdivision; 3) whether the subdivision planning module was consistent with the policies of the Commonwealth, and the Township's official plan, to preserve prime agricultural lands from development; and 4) whether the Township had the burden of proof in these proceedings.

▆▆▆ This Court's standard of review of a Board's decision is limited to determining whether constitutional rights have been violated, an error of law has been committed, or whether necessary findings of fact are supported by substantial evidence. *Hatchard v. Department of Environmental Resources,* 149 Pa.Cmwlth. 145, 612 A.2d 621 (1992), *petition for allowance of appeal denied,* 533 Pa. 647, 622 A.2d 1378 (1993).

▆▆▆ The Township's first contention is that the Board erred as a matter of law when it decided that the density requirement in the Township's official sewage plan pertained only to land use matters under the zoning code, and the trial court's order compelling the Township to adopt Reifsneider's subdivision plan created a vested right to approval under the Township's sewage plan. The Board resolved this issue in its July 30, 1997 Adjudication and Order when it stated:

> [T]he density requirement was in the nature of a land use matter which the [DEP] has no authority to regulate under the Sewage Facilities Act. Further, [DEP] did not err in relying upon a court order which deemed the subdivision approved under the Municipalities Planning Code. Such a determination can not be collaterally attacked via a challenge under the Sewage Facilities Act. The only issues reviewable by the Board are those related to the method of sewage disposal.

(Board's 7/30/97 Adjudication and Order at 23.) We agree with the analysis of the Board. It is well settled that the Sewage Facilities Act is not the proper forum in which to challenge planning, zoning or other such concerns. As this Court noted in *Community College of Delaware County v. Fox,* 20 Pa.Cmwlth. 335, 342 A.2d 468 (1975):

> [U]nder the Sewage Facilities Act, the [DEP] is entrusted with the responsibility to approve or disapprove official plans for sewage systems submitted by municipalities, but, while those plans must consider all aspects of planning, zoning and other factors of local, regional, and statewide concern, it is not a proper function of the [DEP] to second-guess the propriety of decisions properly made by individual local agencies, even though they obviously may be related to the plans approved. Moreover, impropriety related to matters determined by those agencies is the proper subject for an appeal from or a direct challenge to the actions of those agencies as the law provides, not for an indirect challenge through the [DEP]. As we read the Sewage Facilities Act, the function of the [DEP] is merely to insure that proposed sewage systems are in conformity with local planning and consistent with statewide supervision of water quality management . . .

*Id.* 342 A.2d at 478. In this case the Board found that "the planning module for the Reifsneider Subdivision is consistent with the Oley Township Official Plan because the proposed method of sewage disposal is the designated means of sewage disposal for this portion of Oley Township." (Finding of Fact No. 30, Board's 7/30/97 Adjudication and Order at 7.) Because the Township has exhausted all of its appeals on the underlying density issue, and because the method of sewage disposal for the subdivision is otherwise consistent with the Township's official sewage plan, this Court finds that the Board did not commit reversible error by relying on the court order recognizing the subdivision. Furthermore, we reiterate that neither a citizen nor any entity of the Commonwealth should attempt to use the Sewage Facilities Act as an alternate vehicle to challenge the propriety of local regulations or the final decision by a court of competent jurisdiction.

▆▆▆ The Township next argues that the Board erred by ordering the Township to approve the subdivision sewage plan because the plan did not delineate a dispersion plume and did not consider the impact of the subdi-

vision's sewage on the wells of adjacent property owners. The Township contends that the Board committed an error of law by not remanding the case back to DEP because Reifsneider's hydrogeologic plan did not contain a narrative description or map of the dispersion plume, as required by 25 Pa.Code § 71.62(c)(3).[6] The Board, in its Adjudication and Order, stated:

[W]e do not find that the lack of a mapped dispersion plume constitutes an abuse of discretion. It does not appear that the [DEP] interprets this regulation to require maps for every system. Mr. Sigouin [DEP's expert] testified that the [DEP] does not require dispersion plumes to be drawn for every system because it would not be useful to accurately estimate contamination attributable to the subdivision as a whole. Rather, the [DEP] will accept dispersion plume information in narrative form for systems which generate less than 400 gpd of sewage.

In this case, the mass balance equation makes unnecessary a depiction of a dispersion plume for the proposed subdivision. The equation demonstrates that because the lots proposed for the subdivision are large enough to dilute nitrates in the groundwater, any groundwater which leaves the site will not exceed the drinking water standard and can not, by itself, cause an exceedance in the drinking water of other downgradient wells.

(Board's 7/30/97 Adjudication and Order, pp. 32–33.) On this basis we agree with the Board that DEP did not violate its regulations by failing to require a dispersion plume for the Reifsneider subdivision. As this Court stated in *Hatchard*, DEP's "interpretation of its regulations and regulatory scheme is entitled to deference and should not be disregarded unless shown to be clearly erroneous." *Hatchard*, 612 A.2d at 624.

We find there is sufficient evidence to support the Board's decision not to remand this case because Reifsneider's plan omitted a dispersion plume.

■ The Township also argues that the Board committed reversible error because the Board did not consider the impact of the subdivision on the adjacent residential wells. We disagree. In its Adjudication and Order, the Board stated:

In addition, the evidence presented to the Board with respect to other wells in the area does not persuade us that the proposed subdivision alone will cause an exceedance of the nitrate standard in those wells. As seen in Findings of Fact Nos. 120–23, other causes, such as fertilization practices and faulty sewage systems appear to be the major contributors to any possible contamination in those wells. [Reifsneider] should not be held responsible for those other causes.

(Board's 7/30/97 Adjudication and Order, p. 33.) Our review of the record reveals that substantial evidence exists to support the Board's finding that the wastewater from the proposed subdivision will not elevate the nitrate-nitrogen concentration in the groundwater above the drinking water standard.

■ The Township's third argument on appeal is that allowing construction of the Reifsneider subdivision is inconsistent with the policies of the Commonwealth and the Township for preserving prime agricultural lands from development. The Board had occasion to address this issue in both the Township's Supersedeas Petition and in its final adjudication. The Board found that the Reifsneider subdivision did not violate the Commonwealth's prime agricultural lands policy.[7] The Board observed in its Adjudication and Order that the Township:

(iii) Identification and location of existing and potential groundwater uses in the estimated area of impacted groundwater.
25 Pa.Code § 71.62(c)(3)(i)–(iii).

7. The issue of the Township's official plan is moot, having been resolved by the Court of Common Pleas in its decision under the Municipalities Planning Code.

6. Section 71.62(c)(3) provides:
A preliminary hydrogeologic evaluation shall include as a minimum, in map and narrative report form:
(i) The topographic location of the proposed systems in relation to groundwater or surface water flow, or both.
(ii) Estimated wastewater dispersion plume using an average daily flow of 262.5 gallons per equivalent dwelling unit per day or other flow supported by documentation.

[H]ad "failed to demonstrate how the Reifsneider subdivision is inconsistent with the policy to preserve prime agricultural land for agricultural purposes simply because the proposed development is located in an area of prime agricultural lands." (Board's 7/30/97 Adjudication and Order, p. 24, quoting the Board's 11/6/96 Supersedeas Opinion.) The Board admitted in its Adjudication that DEP had not performed any meaningful review of the subdivision's consistency with the policy of preserving prime agricultural land, but found that this abuse of discretion by DEP was environmentally inconsequential. The Board found that "there is no evidence in the record that even if the [DEP] had considered agricultural policy it would have found the proposed subdivision to be inconsistent." (Board's 7/30/97 Adjudication and Order, p. 24.) The Board found that the use of property for residential purposes, as opposed to agricultural purposes, is a local land use issue and is outside the scope of DEP's review under the Act. We agree with the Board. The Township failed to take action on Reifsneider's initial subdivision request, which resulted in the trial court forcing the Township to recognize the subdivision. After exhausting their appeals of that decision, the Township attempted to secure the same objective by amending their sewage plan to limit the development of Reifsneider's land. As noted above, the Act is not to be utilized as an alternate mechanism for achieving a more favorable resolution of a local land use issue.

The Township's final issue on appeal is whether the Board erred by determining that the Township had the burden of proof during these proceedings, but the Township has raised this issue for the first time in its brief to this Court, in violation of the Pennsylvania Rules of Appellate Procedure.[8] The Township raised six objections to the Board's Adjudication in its August 27, 1997, Petition for Review to this Court which did not include the burden of proof issue. (Reproduced Record at 830–34.) Because the

Township failed to properly raise the issue, we decline to address it.

Accordingly, the order of the Board is affirmed.

### ORDER

NOW, February 20, 1998, the order of the Environmental Hearing Board in the above-captioned matter is hereby affirmed.

of the relief sought. The statement of objections will be deemed to include every subsidiary question fairly comprised therein.
Pa. R.A.P. 1513(a).

---

8. Rule 1513 provides, in pertinent part, as follows:

The petition for review shall contain … a general statement of the objections to the order or other determination; and a short statement